**HULSART v. UNITED STATES.**
No. 48628.

United States Court of Claims.
Nov. 7, 1949.

Henry F. Lerch, Washington, D. C., for the plaintiff. Colladay, Colladay & Wallace, Washington, D. C., were on the briefs.

Louis R. Mehlinger, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge, delivered the opinion of the court.

Plaintiff, the son of John Norman Hulsart, deceased, was appointed and qualified as administrator of his father's estate.

The father was an employee of the General Accounting Office.

At the time of his death there were accumulated deductions, to the credit of decedent, in the Civil Service Retirement and Disability Fund.

The suit is for these funds. The wife claims that she was the designated beneficiary. The plaintiff claims them as a part of the estate.

The essential facts are these:

There were two sons by decedent's first marriage. On October 12, 1940, the decedent married Carrie Ruth Hulsart who now resides in St. Louis, Missouri. On November 6, 1940, decedent designated his wife as his beneficiary to receive the funds standing to his credit in the Retirement Fund. The parties separated in April 1941 and did not thereafter live together. No children were born of this marriage and decedent did not see his wife at any time during the six years prior to his death, which occurred April 14, 1947. No steps were taken by either party to legally terminate the marriage, but on April 1, 1947, 13 days prior to his demise, decedent addressed a letter to the Chief, War Contract Audit Section, General Accounting Office, which reads in part as follows:

Also would appreciate necessary papers to apply for retirement.

At present beneficiary named on by C. S. C. Form 2806-1 is my ex-wife who I have not seen for over 7 years. I would appreciate necessary forms to change this to my estate.

On April 4, 1947, the Division of Personnel, General Accounting Office, answered Mr. Hulsart's request in part as follows:

Enclosed also, is the proper form to be used in making a change in the designation of your beneficiary.

When completed, the above forms should be returned to the Personnel Division, General Accounting Office, Washington 25, D. C., for transmittal to the Civil Service Commission.

On April 10, 1947, decedent filled out a new Civil Service Commission form, which, in part, reads as follows:

revoking any and all previous designations of beneficiary heretofore made by me, do now designate the beneficiary or beneficiaries named below, to whom I authorize and direct the United States Civil Service Commission * * * to pay at my death any money standing to my credit in the Retirement and Disability Fund:

In this form decedent named his estate as beneficiary.

The form was sent by mail to the Personnel Director of the General Accounting Office and was received in the Retirement Unit of that office at the close of business on Friday, April 11, 1947. It was then too late to mail it out to the Civil Service Commission on that day. On the next working day, which was April 14, 1947, before the form was sent to the Commission, the Retirement Unit was notified by telephone of decedent's death the same day.

On April 15, 1947, the Retirement Unit sent the designation and decedent's letter of April 1 to the Civil Service Commission by special messenger.

The forms which were sent out by the Civil Service Commission had printed in bold-face capital letters on the first page the following:

FILL OUT BOTH ORIGINAL AND DUPLICATE COMPLETELY, TYPEWRITING PREFERRED, AND FORWARD BOTH COPIES TO THE CIVIL SERVICE COMMISSION, WASHINGTON, D. C.

They also contained a warning that the designation, change or revocation of beneficiary must be received by the Commission prior to the death of the employee or annuitant to have full force and effect. However, the evidence clearly establishes that these forms were furnished the various departments and about three-fourths of the forms, instead of going direct to the Commission went through the different departments that possessed the forms and were forwarded by those departments to the Commission and accepted by the Commission when transmitted in this way. This was the general practice.

No objection was raised by the Civil Service Commission to this procedure until June 3, 1947, when it issued Circular 591.

The issue is whether the cancellation and new designation were effective. This in turn depends upon whether the statute permitting the employee to designate his beneficiary justified the Commission in requiring that such change in designation be actually received by the Commission before it was effective.

We think where, as in this case, the change in designation was regular and clearly established, the employee's wishes should govern. Section 12 of the Civil Service Retirement Act of May 29, 1930, as amended June 22, 1934, 48 Stat. 1201–1202, 5 U.S.C.A. § 724, provides the order of payment as follows:

"First, to the beneficiary or beneficiaries designated in writing by such annuitant and recorded on his individual account;

"Second, if there be no such beneficiary, to the duly appointed executor or administrator of the estate of such annuitant;

"Third, if there be no such beneficiary, or executor or administrator, payment may be made, after the expiration of thirty days from the date of the death of the annuitant, to such person or persons as may appear in the judgment of the Civil Service Commission to be legally entitled thereto, and such payment shall be a bar to recovery by any other person."

It is true the statute mentions the matter of having the designation recorded, but this it seems to us was largely a matter of keep-

ing the record clear. The statute does not state that the recording must be done at a particular time. It is not a part of the designation, but merely a record evidencing designation.

Since there are employees of the Government in various sections of the world who are under classification and who are entitled to the benefits of Civil Service, there might in some instances be many days elapsing after a proper designation before actual receipt of such designation. We think, therefore, that a clearly established designation, evidenced by a manifest intent and complying with the requirements of such designation, should be recognized. Coleman v. United States, D.C.Cir., 176 F.2d 469. This is clearly in accord with the intention of the Congress to permit the funds to be paid in accord with the wishes of the employee. We hold, therefore, that payment should be made to J. Joseph Hulsart, Administrator of the Estate of John Norman Hulsart, deceased.

Even if it were held that the new designation were not complete, since it was not actually recorded before the employee's death, it certainly should be construed as cancelling the original designation, which would produce the same net result.

It is our understanding, however, that under the provisions of the laws of the District of Columbia, where such estate is pending, the widow of the deceased is entitled to a portion of the personal property. The disbursing of this fund by the Administrator will, of course, be subject to the approval of the appropriate court of the District to which the Administrator reports.

The plaintiff is entitled to recover.

HOWELL and LITTLETON, JJ., concur.

MADDEN, Judge (dissenting).

Section 12 of the Civil Service Retirement Act, 48 Stat. 1201–1202, 5 U.S.C.A. § 724, in paragraph (f) says:

"Each employee or annuitant to whom this chapter applies may, *under regulations prescribed by the Civil Service Commission,* designate a beneficiary or beneficiaries to whom shall be paid, upon the death of the employee or annuitant any sum remaining to his credit (including any accrued annuity) under the provisions of this chapter." [Italics added.]

Paragraph (c) provides for the payment of amounts remaining to the credit of the deceased at his death:

"First, to the beneficiary or beneficiaries designated in writing by such annuitant and recorded on his individual account."

The Regulations issued by the Civil Service Commission pursuant to paragraph (f) provide:

1. The designation, change, or revocation of beneficiary shall be in writing on the prescribed Form 2806–1, signed and acknowledged in the presence of two witnesses personally acquainted with the designator, neither of whom shall be named as beneficiary, and must be received in the Civil Service Commission prior to the death of the designator.

The Court holds that the Civil Service Commission Regulation, in its requirement that the designation, change, or revocation must be received in the office of the Civil Service Commission is invalid. I think the Court is in error. Congress expressly authorized the Commission to make regulations to govern the manner of designating or changing beneficiaries. The Commission did so. Even if I were in doubt as to the desirability of the regulation, I would have no more right to refuse to recognize it than I would have to refuse to recognize, because of a similar doubt, a law passed by Congress. If Congress chooses to delegate to the Civil Service Commission the power to fill in the details of a statute in which Congress merely stated the end to be accomplished, we should honor that delegation, unless it is exercised in a way clearly contrary to the purpose of Congress. In this situation, I think Congress would not have been willing that these sums on deposit, some of which will become very large, should be the object of death-bed competition for designations, with consequent disputes as to which one got his designation signed last. Because some safe-

guarding formalities would be desirable, Congress delegated to the Civil Service Commission the power to make regulations.

I have already indicated that I think the Civil Service Commission's Regulation was not only not illegal, as the Court holds, but wise. Any formality, especially with regard to the disposition of assets of deceased persons, will occasionally result in the frustration of the clearly proved intent of the deceased. Yet such formalities are universally imposed, because they prevent confusion and wasteful litigation.

WHITAKER, J., concurs in this opinion.